UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MEGAN M. S.,

                            Plaintiff,

v.                                                             5:19-CV-0026
                                                            (GTS)

COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.
_____

APPEARANCES:                                               OF COUNSEL:

LAW OFFICES OF STEVEN R. DOLSON         STEVEN R. DOLSON, ESQ.
  Counsel for Plaintiff
126 North Salina Street, Suite 3B
Syracuse, New York 13202

SOCIAL SECURITY ADMINISTRATION          ANDREEA L. LECHLEITNER, ESQ.
OFFICE OF GENERAL COUNSEL–REGION II   Special Assistant U.S. Attorney
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, New York 10278

GLENN T. SUDDABY, Chief United States District Judge

## **DECISION and ORDER**

      Currently before the Court, in this action filed by Megan M. S. ("Plaintiff") against the Commissioner of Social Security ("Defendant") pursuant to 42 U.S.C. § 405(g) and 1383(c)(3), are (1) Plaintiff's motion for judgment on the pleadings, and (2) Defendant's motion for judgment on the pleadings. (Dkt. Nos. 11, 14.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is granted and Defendant's motion for judgment on the pleadings is denied.

I.      **RELEVANT BACKGROUND**

   A.      **Factual Background**

Plaintiff was born in 1994, making her 19 years old at her application filing date and 23 years old at the date of the ALJ's decision. Plaintiff reported having a high school education with some college, but no college degree. Plaintiff alleges disability due to periodic paralysis, seizures, and a learning disability.

   B.      **Procedural History**

Plaintiff applied for Supplemental Security Income on January 2, 2014.[1] Plaintiff's application was initially denied on February 18, 2014, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff appeared at a hearing before ALJ Laura Michalec Olszewski on July 8, 2015. On November 3, 2015, ALJ Olszewski issued a written decision finding Plaintiff was not disabled under the Social Security Act. (T. 115.)[2] On May 26, 2017, the Appeals Council remanded for further proceedings, in particular further consideration of Plaintiff's mental impairment according to the correct legal standard. (T. 15.) Plaintiff appeared at a hearing before ALJ Elizabeth W. Koennecke on January 23, 2018. On February 6, 2018, ALJ Koennecke issued a written decision finding Plaintiff was not disabled under the Social Security Act. (T. 15-24.) On December 3, 2018, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (T. 1-3.)

---

[1] Plaintiff subsequently applied for Disability Insurance Benefits, alleging disability beginning July 1, 2014.

[2] The Administrative Transcript is found at Dkt. No. 10. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

### C. The ALJ's Decision

Generally, in her decision, the ALJ made the following seven findings of fact and conclusions of law. (T. 10-18.) First, the ALJ found that Plaintiff was insured for benefits under Title II until June 30, 2016. (T. 18.) Second, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her application filing date. (*Id*.) Third, the ALJ found that Plaintiff's hyperkalemic periodic paralysis syndrome is a severe impairment, while her migraines, seizures, and learning disability are not severe impairments. (*Id*. at 18-19.) Fourth, the ALJ found that Plaintiff's severe impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). (T. 19-20.) Fifth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform

> sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), except that she should avoid unprotected heights and operating a motor vehicle or machinery. The claimant should not be exposed to extremes of temperature. Mentally, she is capable of performing simple and routine tasks.

(T. 20.) Sixth, the ALJ found that Plaintiff has no past relevant work. (T. 23.) Seventh, the ALJ found that Plaintiff remained able to perform a significant number of sedentary jobs in the national economy, specifically as an order clerk, a small products assembler, a circuit board assembler, and an information clerk. (T. 23-24.) The ALJ therefore concluded that Plaintiff is not disabled.

### D. The Parties' Briefing on Their Motions

#### 1. Plaintiff's Motion for Judgment on the Pleadings

Generally, in her memorandum of law, Plaintiff asserts two arguments. (Dkt. No. 11, at 5-16 [Pl.'s Mem. of Law].) First, Plaintiff argues that the ALJ committed harmful error by

failing to perform a function-by-function analysis before making her RFC determination because (a) the ALJ did not specify functions such as how long Plaintiff could stand, walk, or sit, or how much weight she was capable of lifting in a workday, and (b) such omission is not harmless error because the ALJ formulated her RFC determination without the benefit of a medical opinion that would provide a functional explanation for that RFC and, as such, the Court cannot determine whether the RFC is supported by substantial evidence. (*Id.* at 5-9.)

Second, Plaintiff argues that the ALJ erred in failing to properly consider the opinion from treating neurologist Rabi Tawil, M.D., because she (a) failed to provide good reasons supported by evidence to support her rejection of that opinion, (b) failed to conduct the proper analysis for determining whether a treating physician opinion is entitled to controlling weight, (c) ignored the consistency of Dr. Tawil's opinion with the evidence of record (including the opinion of the consultative examiner), and (d) ignored the nature of Plaintiff's severe impairment. (*Id.* at 9-16.) Plaintiff also argues that, even though the ALJ is not required to explicitly consider all of the relevant factors for assessing medical opinions, her analysis is so deficient that it is not clear that she adhered to the treating physician rule. (*Id.*)

### 2. Defendant's Motion for Judgment on the Pleadings

Generally, in his memorandum of law, Defendant asserts two arguments. (Dkt. No. 14, at 8-21 [Def.'s Mem. of Law].) First, Defendant argues that any failure by the ALJ to perform a function-by-function analysis is harmless error because (a) her finding that Plaintiff can perform sedentary work inherently expresses what functions Plaintiff can perform since the definition of sedentary work specifies that an individual can sit for up to 6 hours, stand and/or/walk for up to 2 hours, and lift and carry up to 10 pounds, and (b) the ALJ's findings are based on the appropriate

legal standards and supported by substantial evidence. (*Id.* at 8-9.)

Second, Defendant argues that the ALJ properly weighed the opinion evidence and that her findings are supported by substantial evidence. (*Id.* at 9-21.) More specifically, Defendant argues that the ALJ (a) resolved conflicts in the evidence by affording more weight to the consultative examiner's opinion but including more significant limitations in the RFC to account for the medical and other evidence, and (b) gave sufficient good reasons for discounting Dr. Tawil's opinion, including discussing the inconsistency of that opinion with the other medical findings, Plaintiff's statements to other practitioners, and the frequency of treatment Plaintiff received from Dr. Tawil. (*Id.*)

## II.　APPLICABLE LEGAL STANDARDS

### A.　Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

B.     **Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe

> impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson*, 540 U.S. 20, 24 (2003).

## III. ANALYSIS

After careful consideration of whether the ALJ's RFC and other findings are supported by substantial evidence, the Court answers this question in the negative for the following reasons.

"Before an ALJ classifies a claimant's RFC based on exertional levels of work (i.e., whether the claimant can perform sedentary, light, medium, heavy, or very heavy work), he must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." *Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013) (internal quotation marks omitted). The relevant functions include "physical abilities such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions; mental abilities such as understanding, remembering, carrying out instructions, and responding

appropriately to supervision; and other abilities that may be affected by impairments, such as seeing, hearing, and the ability to tolerate environmental factors." *Cichocki*, 729 F.3d at 176. However, the Second Circuit has rejected attempts to impose a *per se* rule related to an ALJ's failure to perform a function-by-function analysis; rather, "[t]he relevant inquiry is whether the ALJ applied the correct legal standards and whether the ALJ's determination is supported by substantial evidence. *Cichocki*, 729 F.3d at 177.

As a result, the ALJ's failure to conduct a specific function-by-function analysis is not, by itself, error requiring remand. Rather, in order to assess whether the ALJ's RFC and analysis should survive Plaintiff's appeal, the Court must look to whether the ALJ applied the correct legal standards, addressed all relevant limitations, and showed that her findings were supported by substantial evidence.

The Court finds that, in this case, the ALJ has not addressed all of the relevant limitations when assessing the RFC. As Defendant notes, the ALJ's finding that Plaintiff remains able to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) necessarily includes a finding that Plaintiff is able to sit for a significant portion of the workday. *See* 20 C.F.R. §§ 404.1567(a) and 416.967(a) ("Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary to carry out job duties."). In making this finding, the ALJ afforded only limited weight to the opinions from treating physician Dr. Tawil, noting that these opinions "suggest that the claimant cannot sustain even a sedentary exertional level" without discussing any specifics of those opinions. (T. 22.)

In his November 28, 2017, opinion specifically, Dr. Tawil opined, in relevant part, that Plaintiff could sit only 30 minutes at one time before needing to get up, that she needed to walk

approximately every 30 minutes for one-to-five minutes, and that she needed a job that permitted shifting positions at will from sitting, standing and walking. (T. 517.) The ALJ does not explicitly discuss why she rejected these specific limitations for a sit-stand option as opined by Dr. Tawil. Nor does the Court believe that the reasons provided for rejecting Dr. Tawil's opinions as a general matter explain her failure to include a sit-stand option in the RFC. In particular, the ALJ's notation that Dr. Tawil's opinions were not supported because physical examinations routinely showed normal muscle bulk, range of motion, strength, and gait do not address the purpose of the sit-stand option. As can be seen from the evidence, the need to change from sitting to standing or walking at intervals was not related to accommodating the symptoms experienced as part of Plaintiff's severe impairment but rather as a means for preventing an attack that would bring on those symptoms during the workday. Of note, in a previous March 31, 2014, opinion, Dr. Tawil noted that Plaintiff's hyperkalemic periodic paralysis attacks are brought on by "prolonged sitting, prolonged standing, and stress." (T. 480.) On January 22, 2014, Plaintiff reported that her paralytic attacks were triggered after sitting or standing too long or when she was stressed and, on January 6, 2016, she reported that she experienced stiffness when coming in from the cold and after sitting for long periods of time; she also reported to the consultative examiner on April 8, 2015, that attacks could occur from prolonged sitting or standing. (T. 407, 422, 509.) On September 21, 2017, it was noted that triggers for her attacks included long car rides and sleeping, and Aravindhan Veerapandiyan, MBBS, indicated that he discussed with Plaintiff "[l]ifestyle modifications such as avoiding prolonged sitting and other trigger factors." (T. 501, 505.) The evidence also shows why such prevention of attacks was important to her work-related functioning, given that, even with treatment, she experienced

attacks one-to-four times per week, and that the attacks resulted in periods of varying length where she experienced difficulty moving or total paralysis followed by periods of muscle soreness lasting for hours or days. (T. 407, 433-34, 501, 509, 530.) Given the frequency of these attacks even with treatment, the Court cannot say that a limitation meant to prevent those attacks from occurring in the workplace is outside the scope of assessing Plaintiff's work-related functioning. Consequently, the fact that Plaintiff displayed normal physical findings when not suffering an attack of her severe impairment does not explain the ALJ's rejection of a limitation intended to prevent such attacks.

Additionally, the fact that Dr. Tawil saw Plaintiff only once or twice a year does not explain the rejection of this opinion because, as noted above, at least one other source recognized that Plaintiff needed to avoid prolonged sitting. As a result, the Court finds that the ALJ has not provided any discernable explanation (much less a good one supported by substantial evidence) for rejecting the sit-stand option opined by Dr. Tawil. *See Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) ("The failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand."). This presents an issue because the fact that the provided reasons might be sufficient to justify rejection of portions of the opinion would not automatically suggest that they are sufficient to justify rejecting the opinion in its entirety. *See Mitchell v. Colvin*, 14-CV-0303, 2015 WL 3970996, at *3 (W.D.N.Y. June 30, 2015) ("[A]n ALJ is not required to accept a physician's opinion in whole; the ALJ may accept certain portions of the opinion and reject others.") (citing *Veino v. Barnhart*, 312 F.3d 578, 588 [2d Cir. 2002]).

Nor does anything else in the ALJ's decision implicitly explain the reason for her choice not to incorporate a sit-stand option. In particular, the ALJ afforded some weight to the

consultative examiner's opinion (which did not include a sit-stand option), but explicitly noted that she did not accept the consultative examiner's finding of no limitations in the ability to sit, stand, or walk because "the nature of [Plaintiff's] impairments and her subjective complaints of pain, weakness, and immobility" merited greater restrictions than opined by that source. (T. 21.) The ALJ therefore has not shown that her implicit rejection of a sit-stand option is supported by substantial evidence.

The Court recognizes that the Second Circuit has noted that the definition of sedentary work as generally involving sitting for six hours in an eight-hour workday cannot be interpreted as meaning that a claimant is required to "sit without moving for six hours, trapped like a seat-belted passenger in the center seat on a transcontinental flight." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); *see* SSR 96-9p (noting that, for sedentary work, "[s]itting would generally total about 6 hours of an 8-hour workday"). However, the issue in this case is that, despite evidence indicating that Plaintiff is unable to remain seated for prolonged periods of time because prolonged sitting can trigger a paralytic attack, the ALJ made no discussion or findings related to pertinent questions including how long Plaintiff could be seated at one time or how long she would need to stand or walk before returning to a seated position. Nor has there been any evidence from a vocational expert or other source as to how any sit-stand option requirements Plaintiff might have would impact the vocational expert's testimony (and the ALJ's finding based on that testimony) that Plaintiff could perform the jobs identified at Step Five. It is not this Court's task to speculate as to what the effect of this limitation would be or to substitute its judgment for that of a vocational expert. The ALJ's failure to appropriately address this issue therefore renders the Court incapable of determining whether any failure to include a sit-stand

option in the RFC would constitute a harmless error. *See Colvin v. Astrue*, 09-CV-0132, 2011 WL 4055324, at *6 (N.D.N.Y. June 10, 2011) (Bianchini, M.J.) (noting that, "[i]f the need for a sit/stand option 'cannot be accommodated by scheduled breaks and a lunch period, it will erode the claimant's occupational base'") (quoting SSR 96-9p) report and recommendation adopted by 2011 WL 4055313 (N.D.N.Y. Sept. 12, 2011) (Scullin, J.).

For the above reasons, the Court finds that remand for further proceedings is warranted.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is **GRANTED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 14) is **DENIED**; and it is further

**ORDERED** that this matter is **REMANDED** to the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g) for further proceedings consistent with this Decision and Order.

Dated: November 25, 2019
       Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge